**In re the SEARCH OF CERTAIN CELL PHONES.**

**Cr. Nos. 08–174 (JMF), 08–175(JMF), 08–176(JMF), 08–177(JMF).**

United States District Court, District of Columbia.

March 4, 2008.

Frederick H. Banks, Yazoo City, MS, pro se.

### MEMORANDUM OPINION

JOHN M. FACCIOLA, United States Magistrate Judge.

The government has now applied for a search warrant to search the memories of several cell phones that they have seized. At my direction the government has now submitted a Memorandum of Law addressing my concerns that the search of the cell phones was unreasonable under the Fourth Amendment.

The facts are unusual. As recounted by the government in the original application for the search warrant and now in the Memorandum of Law, two men named Antoine Washington and Nicholas Dormu locked themselves into a garage owned by Darryl Jackson, Michael Jackson and Crystal Jackson. When the police confronted Darryl Jackson, he told them that he did not care who or what was in the garage and he demanded that the police leave. The police then saw Darryl Jackson in the house using his cell phone as he cursed at the police officers and demanded they leave. Simultaneously, the police heard "phone chimes, rings and audible voicemail messages coming from inside of the garage." Memorandum of Law at 2.

The police also saw Michael and Crystal Jackson, with cell phones in their ears, in the backyard of the house in which Darryl Jackson was situated. At that point, the police heard cellular phone chimes, and rings and audible voicemail messages coming from inside the garage. Seconds later, gun shots rang out more than three blocks away from the house. While some officers left to investigate the gun shots, others remained and saw Antoine Washington and Nicholas Dormu run out of the garage. Dormu ran to the front of the house, got

**2**

into Michael Jackson's car, which was unlocked with the engine running, and sped away.

I certainly agree with the government that the portion of the cell phone records captured on the day these events occurred would provide evidence pertaining to whether the communications, for example, enabled Dormu to escape by letting him know that Michael Jackson's car was in front of the house (with the engine running) and when he could flee. *See* Memorandum of Law at 2. This might be sufficient to authorize a search (if possible) of those limited records because there is a reasonable likelihood that they would disclose communications relating to Dormu's flight. I part company with the government, however, in its assertion that it should be permitted to search the entire cell records of all five persons.

First, Michael, Crystal, and Darryl Jackson are asserted to have an ownership interest in the garage where the police later found a substantial quantity of powder cocaine, crack cocaine, and marijuana. As noted in my earlier order, a police officer has represented that, in his experience, narcotic traffickers commonly use cell phones to communicate with each, suppliers and customers. But, even if I credit that experience, I would to have to conclude in every instance that the ownership of premises where drugs are found in itself justifies the search of the entire contents of the owner's cell phone, even though there is no indication that the owner ever used the phone in any way to facilitate drug trafficking. While Dormu and Washington were in the garage where the drugs are found, I am not ready to conclude that there is, *ipso facto*, a reasonable likelihood that they have used their cell phones to sell drugs, thus justifying the search of its entire contents. I must therefore decline

to sign the warrant the government has presented.